```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
                                                                  :
                                                                  :   13 Cr. 362 (JPC)
           -v-                                                    :
                                                                  :   OPINION AND ORDER
CRAIG McPHERSON,                                                  :
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Defendant Craig McPherson, who recently completed a 144-month term of imprisonment for conspiring to commit a Hobbs Act robbery and now is on supervised release, has moved for a reduction to his sentence under 18 U.S.C. § 3582(c)(1)(A). Dkt. 120 ("Motion"). The Government opposes the motion on the grounds that McPherson has failed to show "an extraordinary or compelling reason warranting a reduction in his sentence" and that several factors under 18 U.S.C. § 3553(a) counsel against such a reduction. Dkt. 126 ("Opposition") at 4-6. For the reasons that follow, the Court dismisses McPherson's motion without prejudice as moot.

### I.  Background

**A.  Factual and Procedural Background**

In or about April 2013, an individual proffering with the Government (the "CW") informed law enforcement agents that McPherson's Co-Defendant, Christopher Rollins, committed armed robberies of drug dealers. Dkt. 36 ("PSR") ¶ 14. Law enforcement then put in motion a sting operation targeting Rollins. *Id.* Over the following weeks, Rollins met with the CW several times to develop a plan to rob a supposed drug dealer of what Rollins understood to be approximately 14 kilograms of heroin and 8 kilograms of cocaine. *Id.* ¶¶ 14-17. At meetings leading to the

planned robbery, Rollins conveyed to the CW that he had secured multiple firearms and that he would carry out the robbery with two associates. *Id.* ¶¶ 15-16. One of those individuals, Co-Defendant Kevin Tillman, joined Rollins for an April 29, 2013 meeting with the CW. *Id.* ¶ 16. On May 1, 2013, the evening of the planned robbery, Rollins and Tillman met again with the CW, this time accompanied by McPherson. *Id.* ¶ 17. As Rollins, Tillman, and McPherson drove to the location where they expected to carry out the robbery, law enforcement pulled over their vehicle and arrested the three men. *Id.* ¶¶ 18-19. Law enforcement recovered three firearms from the vehicle—a loaded Taurus .357 magnum revolver, a loaded Ruger .357 magnum revolver, and a loaded Mac-11 9-millimeter pistol—as well as ammunition, zip ties, and wigs. *Id.* ¶ 19. McPherson was sitting in the front passenger's seat when the vehicle was pulled over, the firearms were found in a bag on a back seat near Tillman, and the other supplies were found near the center console. *Id.*

On May 15, 2013, McPherson was charged by indictment in three counts relating to the May 1, 2013 attempted robbery. Dkt. 7. On December 16, 2013, he pled guilty, pursuant to a plea agreement with the Government, to conspiring to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951. Dkt. 29. The Honorable William H. Pauley III, to whom this case was previously assigned, sentenced McPherson on June 26, 2014. Dkt. 59 ("Sentencing Tr."). At the sentencing hearing, Judge Pauley adopted the Guidelines calculation in the PSR, which resulted in an offense level of 29 and a Criminal History Category of VI. *Id.* at 41:15-21; PSR ¶ 7. In arriving at that calculation, Judge Pauley adopted the Probation Department's reasoning that, because a Hobbs Act robbery conspiracy was a crime of violence and given McPherson's criminal history, he qualified as a "career offender" under section 4B1.1 of the Sentencing Guidelines and thus was subject to an enhancement of his offense level to 32, which was then reduced three levels on

account of his timely acceptance of responsibility, and an increase of his Criminal History Category to VI. Sentencing Tr. at 41:10-42:2; PSR ¶¶ 7, 33-34, 45; *see also* U.S.S.G. § 4B1.1(a)-(b). An offense level of 29 and a Criminal History Category of VI resulted in a Guidelines range of 151 to 188 months. Sentencing Tr. at 42:2; PSR ¶ 7.

At sentencing, Judge Pauley noted, *inter alia*, the seriousness of the offense, McPherson's criminal history which includes "significant terms of imprisonment" for offenses involving firearms and narcotics, and the "need both for general and specific deterrence." Sentencing Tr. at 41:16-42:21; *see also* 18 U.S.C. § 3553(a). But Judge Pauley also determined that the range of 151 to 188 months' imprisonment was "slightly more than is necessary in this case to achieve the ends of justice," Sentencing Tr. at 42:21-24, observing that McPherson "was less involved [than his Co-Defendants], albeit a full and knowing participant, in what was going on," *id.* at 43:1-2. Judge Pauley imposed a sentence of 144 months' imprisonment, followed by a three-year term of supervised release. *Id.* at 43:19-21.

**B.     McPherson's Request for Administrative Remedy and Release from Prison**

McPherson submitted an administrative request for a sentence reduction pursuant to section 3582(c)(1)(A) to the Bureau of Prisons ("BOP") on July 22, 2022. Motion at 5; Dkt. 120-2. He alleges that the BOP had not answered his request when he filed the present motion on August 29, 2023. Motion at 5-6; *see* 18 U.S.C. § 3582(c)(1)(A) (allowing a defendant to bring a compassionate release motion after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility"); Opposition at 4 n.3 ("[T]here is no dispute that McPherson has exhausted his administrative remedies.").

In his motion, McPherson argues that a change in law—namely, the Second Circuit's holding in *United States v. Chappelle*, 41 F.4th 102, 112 (2d Cir. 2022)—renders the career

offender enhancement inapplicable in his case because a conspiracy to commit Hobbs Act robbery is not a crime of violence.  Motion at 8; *see Chappelle*, 41 F.4th at 104 (concluding that "Hobbs Act robbery can be committed based solely on violence against property, whereas a 'crime of violence' under § 4B1.2 must be based on violence against people").  McPherson contends that, as a result of that change in law, a significant disparity exists between his sentence of 144 months' imprisonment and the correct Guidelines range following *Chappelle*.  *Id.* at 6-9.  The impact of *Chappelle*, he argues, constitutes an extraordinary and compelling reason that justifies a reduction in his sentence.  *Id.*  He also points to his supposed good behavior and rehabilitation while incarcerated as indications that he "does not represent a danger to the community." *Id.* at 9-10.

On October 11, 2023, McPherson was released from custody and commenced his three-year term of supervised release.  *See* Find an Inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Nov. 30, 2023).

## II.     Legal Standard

**A.     Compassionate Release**

Defendants may seek a sentence modification through the BOP or by filing their own motion upon exhaustion of available administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  The statute permits a court to "reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) [of Title 18 of the U.S. Code] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction."  *Id.*  As such, district courts generally address two issues in deciding compassionate release motions: whether extraordinary and compelling reasons justify reducing the defendant's sentence, and whether the section 3553(a) factors counsel in favor of such a reduction.  *United States v. Bennett*, No. 15 Cr. 95 (JPC), 2022 WL 3445349, at *2 (S.D.N.Y. Aug. 17, 2022).  Both conditions must be met for a

court to grant a motion for compassionate release. *See United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021).

The Sentencing Commission's policy statement in section 1B1.13 provides guidance on "what should be considered extraordinary and compelling reasons for sentence reduction," as required by 28 U.S.C. § 944(t).[1] *See* U.S.S.G. § 1B1.13. However, "when a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *Keitt*, 21 F.4th at 73.

**B.    Mootness**

Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases and controversies—if effectual relief is no longer possible, a court must dismiss the case as moot. *See*

---

[1] In *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), the Second Circuit determined that district courts have discretion to assess extraordinary and compelling factors outside the confines of U.S.S.G. § 1B1.13 in compassionate release motions brought by defendants. The Second Circuit reasoned that, because the Sentencing Commission's policy guideline in section 1B1.13 applied only to motions filed by the Director of the BOP, when Congress allowed defendants to file their own motions after exhausting administrative remedies with the First Step Act, there were no "'applicable' guidelines" to constrain a court's assessment of extraordinary and compelling circumstances in motions filed by defendants themselves. *Id.* at 235-36; *see also* 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission amended section 1B1.13, effective November 1, 2023, to encompass compassionate release motions filed by defendants. *See* U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." (emphasis added)). Section 1B1.13 may now provide applicable guidelines that constrain motions filed by both defendants and the BOP. *See United States v. Gonzalez*, 68 F.4th 699, 704 n.2 (1st Cir. 2023); *see also United States v. Rodriguez-Mendez*, 65 F.4th 1000, 1002 (8th Cir. 2023) ("The Sentencing Commission's recently published proposed amendment to § 1B1.13 . . . should resolve any doubt it continues to be an 'applicable policy statement.'"). However, the Court need not determine whether *Brooker* or section 1B1.13 governs the analysis of McPherson's motion because, as discussed *infra* III, the applicable section 3553(a) factors would not justify a sentence reduction here. *See Keitt*, 21 F.4th at 73.

*United States v. Chestnut*, 989 F.3d 222, 224 (2d Cir. 2021); *see also* U.S. Const. art. III, § 2.  In light of McPherson's release from custody, the Court must consider as a threshold matter whether this case has become moot.  *See Chestnut*, 989 F.3d at 224.

A defendant's release from prison does not "automatically mean" a motion for compassionate release is moot if the defendant is still subject to supervised release, as effectual relief may still be possible.  *See id.* (stating the same principle with respect to appeals from a district court's denial of such a motion).  A defendant "retain[s] a vested interest in the outcome" of the case if "[a]rguments for a shorter overall sentence could potentially cause the district court to reduce a defendant's term of supervision . . . to compensate for the excess time the defendant served in prison."  *Id.* at 224-25 (internal quotation marks omitted).  Conversely, a motion for compassionate release becomes moot when a defendant who has been released from prison and is subject to supervised release "neither request[s] that the district court reduce his term of supervision nor advance[s] any arguments to suggest that such a reduction is warranted."  *Id.* at 223.

### III.   Discussion

McPherson did not request a reduction to his term of supervised release, and his arguments, liberally construed, do not support an overall sentence reduction that would justify such a reduction, particularly in light of the nature of his offense and his criminal history.  *Cf. United States v. Vandegrift*, No. 20-3877-cr, 2022 WL 102070, at *1 (2d Cir. Jan. 11, 2022) ("[I]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (internal quotation marks omitted)).  As such, there is no longer any possibility of effectual relief with respect to his motion for compassionate

release.  Without a live case or controversy, McPherson's motion is moot and must be denied without prejudice.

### A.    McPherson Has Not Requested a Reduction of His Term of Supervised Release

Even construed liberally, McPherson's motion does not request a reduction in his period of supervised release.  His motion seeks a sentence "reduction to time served," Motion at 9, and argues for that reduction by only referring to his period of incarceration, *see, e.g.*, *id.* at 2 (referencing "his 144 month sentence"); *id.* at 7-8 (discussing his 144-month sentence and the 70 to 87 month Guidelines range he argues should have been applied); *id.* at 9 ("[McPherson] does not represent a danger to the community if release [sic] approximately one year before he is scheduled to be released on October 11, 2023 . . . ."); *id.* at 10-11 (urging the Court to "reduce his incorrect career offender sentence to time served" because he should have been sentenced to 70 to 87 months' imprisonment, as opposed to 144 months).  In fact, instead of seeking any reduction of his three-year term of supervised release, McPherson points to the very fact that he will be under supervision for three years as support for his request for early release from custody.  *Id.* at 10 ("[W]hat'smore [sic], upon release to time served . . . Mr. McPherson still faces three years of supervised release, and thus [pursuant to] any violations of the rules or laws . . . he will be promptly returned to prison.").  These arguments make clear that McPherson's motion seeks only a reduction of his custodial sentence and not a reduction of his term of supervised release.

### B.    A Reduction of McPherson's Term of Supervised Release Is Not Warranted

The Second Circuit's analysis in *Chestnut* suggests that the Court should still determine whether a compensatory reduction in supervised release is warranted in this case.  *Chestnut*, 989 F.3d at 224-25.  Unlike the defendant in *Chestnut*, McPherson does not base his motion solely on COVID-19 risks or other circumstances that would be alleviated through release.  *See id.* at 225.

Rather, he alleges that a change in law arising from the Second Circuit's decision in *Chappelle* necessitates a reduction of his sentence of incarceration, and further points to information suggesting his rehabilitation while incarcerated. These arguments, liberally construed, do not support a reduction of his term of supervised release "to compensate for the excess time [he] served in prison," *id.* (internal quotation marks omitted), when viewed in light of the circumstances of his offense and his criminal history.

McPherson argues that, because the Second Circuit held in *Chappelle* that a conspiracy to commit Hobbs Act robbery is not a categorical "crime of violence," the career offender enhancement under section 4B1.1 should not have applied to increase his offense level and Criminal History Category. Motion at 6-9. He argues that he "has served all of the 70-87 month guideline sentence[2] he would have received, absent the career offender application, which is also the actual guideline range and sentence he would receive if sentenced today, post *Chappelle*." *Id.* at 10.

McPherson is correct in certain respects. Section 4B1.1's career offender enhancement only applies where an adult defendant is convicted of "a felony that is either a crime of violence or a controlled substance offense; and . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). For McPherson, the question is whether his conviction in this case for conspiring to commit a Hobbs Act robbery constitutes a "crime of violence" within the meaning of the Guidelines. Under the Second Circuit's decision in *Chappelle*, it does not. 41 F.4th at 109-12; *see also id.* at 111 ("It

---

[2] McPherson maintains that, post-*Chappelle*, his Guidelines range would be 70 to 87 months' imprisonment. Motion at 6-9. Absent the career offender enhancement, however, McPherson's offense level would be 23, *see* PSR ¶ 32, and his Criminal History Category would be V, *see id.* ¶ 45, which results in a Guidelines range of 84 to 105 months' imprisonment, *see* U.S.S.G. ch. 5, pt. A.

follows from the above discussion that because Hobbs Act robbery is not a crime of violence under the career offender Guideline, a conspiracy to commit Hobbs Act robbery would not be a crime of violence by operation of Application Note 1 to § 4B1.2 . . . ."). Accordingly, McPherson's conviction for a Hobbs Act robbery conspiracy cannot provide the basis for the application of a career offender enhancement under section 4B1.1.

Without the career offender enhancement, McPherson's resulting advisory Guidelines range is 84 to 105 months' imprisonment, which is significantly lower than the range of 151 to 188 months that Judge Pauley calculated and also well below the 144-month sentence that Judge Pauley in fact imposed. In addition, McPherson has proffered various facts that suggest his rehabilitation while incarcerated and, in his view, a low likelihood of recidivism. *See* Motion at 9-10. The Court need not make a final determination about whether he has shown extraordinary and compelling reasons, however, because the applicable section 3553(a) factors would counsel against reducing his term of supervised release. *See Keitt*, 21 F.4th at 69.

Because McPherson has now been released from custody, the question for this Court is not whether his term of incarceration should be reduced (or course, it cannot be), but whether his three-year term of supervised release should be reduced.[3] As noted, under *Chestnut*, "[a]rguments for a

---

[3] It is hardly clear that, even were McPherson still incarcerated, the section 3553(a) factors would counsel in favor of a reduction of his custodial term. On one hand, as noted, there is no question that McPherson's Guidelines range post-*Chappelle* is considerably lower than the range Judge Pauley arrived at after applying the career offender Guideline. But that range is but one of the many factors under section 3553(a) that a judge must consider when sentencing a defendant. *See Gall v. United States*, 552 U.S. 38, 49 (2007); 18 U.S.C. § 3553(a)(4)(A). Judge Pauley carefully considered those other factors when imposing a 144-month sentence for McPherson. For instance, Judge Pauley took into account "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), and the "need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2), explaining that "this is a serious offense. It involved firearms, and it was indicative of other kinds of crimes that he's been involved with in the past involving firearms and narcotics." Sentencing Tr. at 42:4-7. This Court similarly noted when it denied a compassionate release motion filed by

shorter overall sentence could potentially cause the district court to reduce a defendant's term of supervision, whether because the original term is deemed to have been too long from inception or to compensate for the excess time the defendant served in prison." 989 F.3d at 224-25 (internal quotation marks omitted). Here, taking into account the nature of this offense and McPherson's lengthy and troubling criminal history, a three-year term of supervised release advances vitally important interests as this defendant reintegrates into society. That is particularly the case given the thoughtfully considered conditions imposed by Judge Pauley for this defendant.

In determining whether to include a term of supervised release as part of a defendant's sentence, and if so, what length and conditions to impose, a district court must "consider the factors

---

McPherson's Co-Defendant, Tillman, that McPherson's crew engaged in "exceedingly serious and dangerous conduct that demands a lengthy sentence," particularly given the weapons that were found in the vehicle. Dkt. 125 at 9-10. Judge Pauley further considered "the history and characteristics of" McPherson, 18 U.S.C. § 3553(a)(1), and the need "to protect the public from further crimes of" him, *id.* § 3553(a)(2)(C), lamenting that McPherson's "life has been one that's been governed by his criminal history and his violent, assaultive conduct and contact with weapons, and for most of his adult life he's been in prison. . . . He is a menace in many ways." Sentencing Tr. at 41:17-22. Judge Pauley further noted the "need both for general and specific deterrence here." *Id.* at 42:9-10; *see* 18 U.S.C. § 3553(a)(2)(B). Judge Pauley additionally considered "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6). *See* Sentencing Tr. at 42:21-25. McPherson's co-conspirators in the robbery, Tillman and Rollins, each received 151-month sentences. *See* Dkt. 39 at 2; Dkt. 62 at 2. Judge Pauley also imposed a sentence below the calculated Guidelines range, reflecting that he did not just mechanically impose a Guidelines sentence, but instead carefully considered McPherson's role in the offense. *See* Sentencing Tr. at 42:22-43:2 (acknowledging that McPherson "was less involved, albeit a full and knowing participant, in what was going on" with respect to planning the robbery, and accordingly finding the range of 151 to 188 months to be "slightly more than is necessary in this case to achieve the ends of justice"). Aside from the lower Guidelines range, all these section 3553(a) considerations remain compelling today.

The Court also notes that the lower, post-*Chappelle* Guidelines range of 84 to 105 months is only on account of the "strange result[]" that, under the categorical approach, conspiring to committed an armed robbery of a drug dealer does not qualify as a "crime of violence." *Chappelle*, 41 F.4th at 112. Were McPherson still in prison, and the question were whether to reduce his prison term, the strangeness of that result would factor into the amount of weight that this Court would afford the Guidelines range.

10

set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(c). Those factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); "the need for the sentence imposed . . . (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* § 3553(a)(2); "the kinds of sentence and the sentencing range established for" the offense, with conditions not relevant here, *id.* § 3553(a)(4); "any pertinent policy statement . . . issued by the Sentencing Commission," with conditions not relevant here, *id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6); and "the need to provide restitution to any victims of the offense," *id.* § 3553(a)(7). Similarly, a sentencing court may impose any condition of supervised release that "(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D); (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)." *Id.* § 3583(d). Many of these factors strongly counsel in favor of keeping McPherson's three-year term of supervised release—along with the conditions imposed by Judge Pauley—in place.

To start, it is clear that a term of supervised release is appropriate for this defendant given "the nature and circumstances of the offense," *id.* § 3553(a)(1), and the need "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C). In less than twenty years prior to this offense, McPherson had three convictions for aggravated assault, PSR ¶¶ 37, 40, 43, four convictions for unlawfully possessing a firearm, *id.* ¶¶ 38-39, 42, 44, and one conviction for intent

to distribute a controlled substance within 1,000 feet of a school, *id.* ¶ 41. And this crime, of course, involved his participation in a potentially deadly plot to rob another individual at gunpoint. As Judge Pauley noted at sentencing, McPherson's "life has been one that's been governed by his criminal history and his violent, assaultive conduct and contact with weapons, and for most of his adult life he's been in prison." Sentencing Tr. at 41:17-22; *see also id.* at 41:21-22 ("He is a menace in many ways."); *id.* at 43:14 ("Your life has been nothing, really, but violence."). For such a defendant, a term of supervised release is essential to help ensure that he does not return to criminal activity upon release from incarceration and further to protect the public.

Moreover, Judge Pauley imposed various special conditions of supervised release specifically focused on advancing appropriate purposes for this defendant as he reenters society. Judge Pauley imposed conditions geared at providing McPherson "with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* § 3553(a)(2)(D)—requiring him to participate in an educational and vocational training program, an anger management program, and a substance abuse treatment program. Dkt. 55 at 4. Judge Pauley also imposed special conditions that endeavor to "protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C)—specifically, a search condition and the anger management program condition. Dkt. 55 at 4. Indeed, in imposing the anger management condition, Judge Pauley discussed the particular importance of such a condition for McPherson to help him get to a place where he can control his anger:

> [McPherson] is a violent person who needs to get his aggressive behavior under control.
>
> And even in listening to him today, I could sense the aggression. Maybe the record . . . , itself, will support it, but I want to make it clear on the record that I think the defendant has significant anger management problems that need to be controlled, and I'm going to impose that as a condition of supervised release . . . .

12

Sentencing Tr. at 43:3-11.  McPherson's lengthy criminal history—which as noted included multiple convictions for aggravated assault and possessing a firearm, PSR ¶¶ 37-40, 42-44, all prior to the instant crime of conspiring to commit an armed robbery of a suspected drug dealer—certainly supports Judge Pauley's assessment that anger management is appropriate for McPherson upon his release from prison.

In sum, taking into account the seriousness of the offense, as well as McPherson's highly troubling criminal history, the three-year term of supervised release imposed by Judge Pauley, including the carefully considered conditions of that supervision, is essential to help McPherson reenter society and be in a position to lead a law-abiding life.  Reducing that term—at least at this early stage of supervision[4]—would only impede that reintegration.  The Court therefore determines that no reduction of supervised release would be appropriate, rendering McPherson's motion moot. *Cf. Chestnut*, 989 F.3d at 225 ("For a term of supervised release to preserve the presence of a live case or controversy, there must be more than a remote and speculative possibility that the district court could or would impose a reduced term of supervised release were [the Second Circuit] to remand the matter." (internal quotation marks omitted)).

---

[4] McPherson has been on supervised release for only about one-and-a-half months as of the date of this Opinion and Order.  Should McPherson be so inclined, he retains the right to file a separate motion to reduce his term of supervised release.  *See Chestnut*, 989 F.3d at 225; *see also* 18 U.S.C. § 3583(e); Fed. R. Crim. P. 32.1(c).

### IV.     Conclusion

For the foregoing reasons, the Court dismisses McPherson's motion for compassionate release without prejudice as moot. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 120 and to mail a copy of this Opinion and Order to McPherson.

SO ORDERED.

Dated: December 1, 2023
      New York, New York

                                           JOHN P. CRONAN
                                    United States District Judge